**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------X
DEBORAH LYONS-BIRSNER,

                  Plaintiff,

      -against-

THE MADISON SQUARE GARDEN COMPANY, d/b/a
MADISON SQUARE GARDEN,

                  Defendant.
------------------------------------------------X

**COMPLAINT**

Case No.: 20-cv-3798

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Plaintiffs, Deborah Lyons-Birsner, by her attorney, The Rose Law Group, PLLC, upon information and belief, complain as follows:

## NATURE OF THE CASE

1. Plaintiff, Deborah Lyons-Birsner brings this Complaint against Defendant The Madison Square Garden Company, d/b/a Madison Square Garden, (collectively, hereinafter the "Defendant" or "MSG") for injunctive relief, damages, attorney's fees and costs, including but not limited to disbursements, court expenses and fees, pursuant to 42 U.S.C. § 12181 et seq.(hereinafter the "ADA") and the ADA Accessibility Guidelines 28 C.F.R. Part 36 (hereinafter "ADAAG"), and for injunctive relief and damages, pursuant to the New York City Human Rights Law ("NYCHRL") based on the facts and occurrences described herein.

## JURISDICTION AND VENUE

2. This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq. This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1343. Supplemental Jurisdiction is proper over the State law claims pursuant to 28 U.S. Code § 1367.

3. Venue is proper in this district based upon Defendant's residency within New York County, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

4. At all times material hereto, Plaintiff, Deborah Lyons-Birsner, was and is over the age of 18 years, and was a resident of Suffolk County, which is located within the Southern District of New York.

5. Plaintiff suffers from what constitutes a "qualified disability" under Title III of the ADA; Plaintiff was in a car accident, and uses a wheelchair for mobility. Plaintiff also has a physical disability within the meaning of the laws of the State of New York.

6. Defendant MSG, a Foreign Business Corporation authorized to do business within New York, with its Principle Executive Office located at Two Pennsylvania Plaza, New York, New York 10121.

7. Defendant MSG conducts business as a venue for sporting events, concerts, and other events. It touts itself as "a leading live entertainment company renowned for its world-famous arena complex, professional sports teams, entertainment properties and historic showplaces."

8. Prior to the commencement of this action, Plaintiff personally visited the Defendant's property with the intention of using the Subject Facility; however, Plaintiff was denied full access to, and full enjoyment of the facilities at Defendant's Property and the subject facility, and/or any accommodations offered to the public therein in that Plaintiff was restricted and limited by her disabilities, and therefore suffered an injury in fact. That, Plaintiff continues to desire to visit the Defendant's Property and/or the subject facility in the future, but continues to be injured in that she is unable to and continues to be

discriminated against due to the architectural and movable barriers that, upon information and belief, remain at the subject facility, all in violation of the ADA and New York City Human Rights Law.

9. That all events giving rise to the instant action occurred in the City of New York, New York County, State of New York.

## FACTUAL ALLEGATIONS

10. Plaintiff suffers from numerous physical disabilities which prohibit her from walking regularly.

11. Plaintiff uses a wheelchair to get around and is unable to access areas which are not accessible.

12. On May 22, 2019, Plaintiff attended a concert at Defendant MSG's stadium with her daughter for her birthday.

13. Plaintiff purchased her tickets in a section specifically sectioned for wheelchair access.

14. The effort to travel to Manhattan in her wheelchair was significant, but given the importance of the birthday for her daughter, Plaintiff undertook the effort it required to get to Defendant MSG in order to attend the concert with her daughter.

15. Upon arriving in the designated section, the area was filled with folding chairs which were connected to the next chair all of the way to the end of the area. This made it impossible for people to enter or exit the area without other patrons climbing over Plaintiff.

16. The area where Plaintiff was directed to sit had only one exit from the row, which required people to go over her.

17. The space provided for Plaintiff to sit had no space on either side and was approximately twenty (20) inches in total, the standard width of a folding chair.

18. There was no means of accessing the space from behind or in front yet there was not sufficient space provided for Plaintiff to access the seating area from the side. Rather, she was relegated to the space typically provided for a single folding chair which in no way accommodated her access.

19. Further, the space provided was significantly less than what would be necessary for Plaintiff to access the area comfortably.

20. While the seats could have been set up in a way to provide Plaintiff with adequate space in front and behind her, it was instead set up in a way that made much of the space unusable and limited her ability to access it.

21. Upon information and belief, the space provided to Plaintiff to access the space was less than forty-eight (48) inches.

22. Further, there were folding chairs stored behind the row, limiting access.

23. Plaintiff immediately contacted Defendant MSG's attendants and pointed out the problems.

24. The Arena Concourse Supervisor and Facilities employees both agreed that the arrangement was unacceptable but said there was nothing they could do as the show was sold out.

25. Throughout the entire show, Plaintiff could not maneuver her chair at all and was damaged by Defendant MSG's failures to comply with the federal and city laws requiring that individuals requiring wheelchairs be accommodated in public accommodation seating.

26. Further, the ramp leading to and away from the seat was, upon information and belief, of a higher incline than what is reasonably and safely traversable by an individual in a wheelchair without significant assistance.

27. Upon information and belief the incline was significantly more than one (1) inch of rise for every eight (8) inches of length.

28. This failure to design the accessible seating in a manner which was traversable safely by a wheelchair caused Plaintiff to require regular assistance to simply go up and down the ramp, further damaging her.

29. Plaintiff further had to use an elevator to go to the floor above or below in order to access a restroom that was accessible for a wheelchair.

30. As a result of Defendant MSG's failure to comply with the ADA and NYCHRL, Plaintiff has been damaged in an amount to be assessed at trial by a jury of her peers.

31. Defendant MSG should be enjoined from further violations of the ADA and NYCHRL and Ordered to alter the location in order to comply with the law.

**AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION FOR
VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

32. On or about July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

33. Congress specifically found, *inter alia,* that:

    a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    b. Historically, society has tended to lisolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

    c. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities

    d. Discrimination against individuals with disabilities persists in such critical areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services; and,

  e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our fi'ee society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

34. Congress explicitly set forth the purpose of the ADA; to wit:

  i. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

  ii. Provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

  iii. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of disclimination faced day-to-day by people with disabilities.

35. The congressional legislation provided commercial enterprises with a period of one and a half years from the enactment of the statute to implement the requirements imposed under the ADA.

36. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).

37. Pursuant to 42 U.S.C. § 1281(7) and 28 C.F.R. §36.104, the Subject Facility, which is subject to this action is a public accommodation because it provides good and services to the public.

38. Upon information and belief, the Subject Facility has begun operations, and/or has undergone substantial remodeling, repairs and/or alterations since January 26, 1990, and/or has sufficient income to make readily achievable accessibility modifications.

39. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA (the "ADAAG").

40. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).

41. The Defendant's Property and Subject Facility is legally required to be, *but is not,* In compliance with the ADA and/or ADAAG.

42. The Defendant's Property and Subject Facility are in violation under the ADA, 42 U.S.C. § *12181 et seq.* and 28 C.F.R. § 36.302 *et. seq.* in that the Defendant is discriminating against the Plaintiff, as a result of the following specific violations, which include, but are not limited to, the following:

   a. Failure to comply with the requirements of the DOJ's 2010 ADA standards, section 221;

   b. Failure to provide a minimum of 36 inches from side to side for a wheelchair seat required by Chapter 8 of the 2004 ADAAG, section 802.1.2;

   c. Failure to provide a minimum of 60 inches from front to back for wheelchair seating as required by Chapter 8 of the 2004 ADAAG, section 802.1.3;

   d. Failure to provide an accessible route to and from the wheelchair space as required by Chapter 8 of the 2004 ADAAG, section 802.1.4;

   e. Failure to provide an entrance to the space reserved for Plaintiff which did not overlap with the circulation path as required by Chapter 8 of the 2004 ADAAG, section 802.1.5; and,

   f. Violations of other sections of the law which, while existing, have not been specifically documented by the Plaintiff and which may be discovered during the discovery period.

43. Plaintiff has attempted to access the Defendant's Property and Subject Facility, but has been precluded from accessing the Defendant's Property and Subject Facility, because of her disabilities; specifically, Plaintiff was precluded by physical barriers to access, dangerous conditions, and ADA violations existing upon the Defendant's Property and Subject Facility.

7

44. These violations, which include but are not limited to those enumerated herein, prohibit Plaintiff from accessing the Defendant's Property and Subject Facility, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

45. Remediating the ADA and/or ADAAG violations set forth herein is both technically feasible and readily achievable.

46. Plaintiff intends to visit the Defendant's Property and Subject Facility, again in the future (immediately upon Defendant's compliance with an Order of this Court requiring that Defendant remedy the subject ADA violations) in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations offered at the Defendant's Property and Subject Facility; however, in light of his disability, unless and until the Defendant's Property and Subject Facility, is brought into compliance with the ADA, Plaintiff will remain unable to fully, properly, and safely access the Defendant's Property and Subject Facility, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

*47.* As a result of the foregoing, Defendant has discriminated against, and continues to discriminate against the Plaintiff, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Defendant's Property and/or Subject Facility. Defendant's discrimination is specifically prohibited by 42 U.S.C. § 12182, *et seq.*

48. Moreover, Defendant will continue to discriminate against Plaintiff, and others similarly situated, until it is compelled by this Court to remove all physical barriers upon the Defendant's Property and Subject Facility, which violate the ADA and/or ADAAG, including but not limited to those specifically set forth herein, and to make the

Defendant's Property and Subject Facility, accessible to and usable by persons with disabilities, including Plaintiff.

49. Plaintiff is without adequate remedy at law, and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA and/or ADAAG violations that exist upon the Defendant's Property and Subject Facility, including but not limited to those set forth herein.

50. This Court is vested with authority to grant injunctive relief sought by Plaintiff herein, including entry of an order requiring alteration and modification of the Defendant's Property and Subject Facility, so as to make readily accessible to and useable by individuals with disabilities, including but not limited to Plaintiff to the extent required by ADA and/or ADAAG.

51. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay counsel reasonable attorney's fees, costs, and litigation expenses, all of which are recoverable against the Defendant.

**AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION FOR VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW**

52. The New York City Human Rights Law provides:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived ... disability ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof ... to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of ... disability ...

53. Defendant is in violation of the New York City Human Rights Law by denying the Plaintiff full and safe access to all the accommodations, benefits and services of

Defendant's Property and Subject Facility.

## ATTORNEYS' FEES AND COSTS

54. Plaintiff has been obligated to retain the undersigned attorneys for purposes of filing and prosecuting this lawsuit. Pursuant to the ADA and New York City Human Rights Law, Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by the Defendant.

55. Plaintiff respectfully requests a judgment pursuant to N.Y. Exec. Law § 297, including compensatory damages contemplated by § 297(9).

## DAMAGES

56. Plaintiff demands One Thousand Dollars ($1,000.00) in compensatory damages based on Defendant's violations of the ADA and NYCHRL along with damages to compensate her for the tickets which she purchased to a show which she could not enjoy due to Defendant's failure to comply with the law.

## INJUNCTIVE RELIEF

57. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant injunctive relief in favor of the Plaintiff, including but not limited to the issuance of an Order to alter the Defendant's Property and Subject Facility so that they are made readily accessible to, and useable by, all individuals with disabilities, including Plaintiff, as required pursuant to the ADA and the New York City Human Rights Law, and closing the facilities until the requisite modifications are complete.

WHEREFORE, Plaintiff hereby demands judgment against the Defendant and requests the following injunctive and declaratory relief:

(a) A declaration that the Defendant's Property and Subject Facility owned, leased, operated, controlled and/or administrative by Defendant are in violation of the ADA and the New York City Human Rights Law;

(b) An Order requiring Defendant to evaluate and neutralize their policies, practices and proceeds towards individuals with disabilities, for such reasonable time to allow the Defendant to undertake and complete collective procedures to Defendant's Property and the Subject Facility;

(c) An Order requiring Defendant to alter their facilities and amenities to make them accessible to and useable by individuals with disabilities as required pursuant to Title III of the ADA and the New York City Human Rights Law;

(d) An award of reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, in favor of the Plaintiff; and

(e) Such other and further relief that this Court deems just, necessary and proper.

Dated: Astoria, New York
May 15, 2020

**THE ROSE LAW GROUP, PLLC**

Jesse C. Rose (JR-2409)
3109 Newtown Avenue
Suite 309
Astoria, New York 11102
PH: (718) 989-1864
Fax: (917) 831-4595